## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY DEJUAN WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 2:18-cv-8013-LSC |
| | ) | (2:15-cr-00283-LSC-SGC-15) |
| | ) | (2:15-cr-00427-LSC-SGC-1) |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF OPINION

## I.      Introduction

Anthony DeJuan Williams ("Williams") has filed with the Clerk of this Court a motion pursuant to 28 U.S.C. § 2255. (Doc. 1.) The Government has responded in opposition to the motion. (Doc. 5.) For the reasons set forth below, the § 2255 motion is due to be denied and this action dismissed without an evidentiary hearing.

## II.     Background

### A.      Trial and Sentencing

On September 24, 2015, Williams was charged along with 24 others in a superseding indictment in *United States v. Hall, et al.*, 2:15-cr-00283-LSC-SGC (hereinafter "*Hall*"), with conspiring to possess with the intent to distribute and to distribute heroin, cocaine hydrochloride, and "crack" cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C). Williams was also charged in three counts with using a telephone in furtherance of the drug trafficking conspiracy, in violation of 21 U.S.C. § 843(b).

Williams was arrested on the superseding indictment on October 21, 2015. During the execution of that arrest warrant, further evidence of Williams' involvement in the drug trafficking conspiracy was seized from his home, including various amounts of cocaine, a half kilogram of heroin, and five firearms.

Based on this new evidence, the grand jury returned a second indictment against Williams on December 28, 2015, charging him with possessing with the intent to distribute 500 grams or more of a mixture and substance containing cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession of five firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); and possession of five firearms after being convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1). That case is styled *United States v. Williams*, 2:15-cr-00427-LSC-SGC (hereinafter, "*Williams*"). Count Two

alleged that five firearms recovered from the home were possessed not only in furtherance of the cocaine hydrochloride seized from Williams' home on October 21, 2015, but also in furtherance of the drug trafficking conspiracy charged in the *Hall* case.

Two days after the indictment was returned in *Williams*, the Government filed a motion to consolidate *Hall* and *Williams* for trial. On January 25, 2016, Williams' counsel responded in opposition. Following a telephone conference in which the Court concluded that the Government's motion was premature, the Government filed a supplemental brief in support of its motion to consolidate. The pleadings were referred to the assigned United States Magistrate Judge, who granted the Government's motion to consolidate *Hall* and *Williams* for trial.

On April 5, 2016, Williams filed a motion to suppress that was responded to by the Government on April 13, 2016. A suppression hearing was held on April 27, 2016, and this Court entered an order denying Williams' motion to suppress on May 4, 2016.

The consolidated cases proceeded to trial on May 9, 2016. All other defendants in the 25-person conspiracy had pled guilty except for Williams and one other alleged co-conspirator. Several co-defendants testified against Williams at trial. The jury returned a verdict on May 13, 2016, finding Williams guilty on

Counts 1, 19, 64, and 66 of the *Hall* case and on Counts 1 and 3 of *Williams*. The United States dismissed Count 2 of *Williams* when it appeared from a juror's question that the jury was unable to reach a verdict on that Count.

On May 23, 2016, Williams filed a motion for a new trial, which the Court denied. On September 27, 2016, the Court sentenced Williams to 293 months' imprisonment on Count 1 and 48 months' imprisonment on Counts 19, 64, and 66 of *Hall*, and 293 months' imprisonment on Count 1 and 120 months' imprisonment on Count 3 of *Williams*, separately, with each count to be served concurrently with the other.

### B. Appeal

Williams filed a notice of appeal in both cases on October 6, 2016. On October 25, 2016, both of Williams' trial counsels filed motions to withdraw from representation. That same day, the Court granted the motions to withdraw and approved the appointment of appellate counsel *in forma pauperis*. Michael Tewalt with the Federal Public Defender's Office was appointed to represent Williams on appeal.

Mr. Tewalt timely filed Williams' appellate brief with the United States Court of Appeals for the Eleventh Circuit. In that brief, Williams argued that this Court erred in denying his motion to suppress evidence recovered following the

entry and protective sweep of the outbuilding on his property. He further argued that the arrest warrant was improperly executed because testimony established that it might have been executed a minute or two before 6:00 a.m., the earliest time on which the warrant was authorized to be executed. The Government filed a brief in opposition on May 24, 2017. On September 20, 2017, the appellate court affirmed Williams' convictions and sentence. The Eleventh Circuit held that this Court properly found that the initial entry into the outbuilding was proper pursuant to a valid arrest warrant and that the search qualified as a valid protective sweep. The court also found no merit to Williams' assignment of error that the warrant was improperly executed outside of the authorized time. Ultimately, the opinion was issued as the Eleventh Circuit's mandate on November 27, 2017. Williams did not petition the United States Supreme Court for a writ of certiorari.

### C. § 2255 Proceedings

On April 18, 2018, Williams signed his § 2255 motion, which was filed into the record two days later.[1] Williams enumerates ten grounds on which he contends that he is due relief, and for each ground, he also avers that his appellate counsel was ineffective for failing to raise the ground before the Eleventh Circuit. Liberally

---

[1]     The Eleventh Circuit applies the "mailbox rule" to deem a prisoner's § 2255 motion to have been filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

construing the substance of his claims,[2] the following points represent the ten bases

on which Williams seeks relief in his initial § 2255 motion:

1. FBI agents failed to "knock and announce" their presence at his home when they entered and arrested him. Williams also claims that the agents did not have a warrant to arrest him.

2. His due process and Fourth Amendment rights were violated when agents used "flash bang" devices in arresting him, which he claims was excessive force.

3. His due process and Fourth Amendment rights were violated when he was arrested inside his home without a warrant.

4. His Fourth Amendment and due process rights were violated when agents simultaneously entered an outbuilding on his property where they saw contraband in plain view.

5. His Sentencing Guidelines were improperly enhanced using the dismissed Count Two of the *Williams* indictment, which alleged that he possessed the firearms in furtherance of a drug trafficking crime.

6. His appellate counsel was ineffective for failing to raise an actual innocence claim on appeal.

7. He claims that FBI Special Agent M. Wayne Gerhardt ("Agent Gerhardt") testified untruthfully during his trial regarding his presence at his arrest, his application for a search warrant, and the genesis of the conspiracy.

8. The Government committed a *Brady* violation in failing to produce copies of the arrest warrant, search warrants, and all affidavits in the search of his home.

---

[2] This Court liberally construes Williams' pleadings as he is a *pro se* litigant. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

9.    His indictment was constructively amended when the Court instructed the jury on mandatory minimum amounts of cocaine and heroin that were not found on his person or in his immediate control.

10.   His indictment failed to charge an offense. He claims that the jury should not have been instructed on crimes involving heroin because heroin was only listed in the superseding indictment in *Hall* and not in *Williams*. He also alleges that the superseding indictment in *Hall* was never unsealed.

(Doc. 1).

After the Government responded in opposition to the motion, Williams filed several further pleadings, including a motion for return of property (doc. 7, also filed as doc. 659 in the *Hall* case and doc. 57 in the *Williams* case),[3] a motion for an evidentiary hearing (doc. 8), and a "motion for relief" (doc. 9). In the motion for an evidentiary hearing and the "motion for relief," Williams expounds on several of the above claims, but in the "motion for relief," Williams also appears to be raising a new claim that his indictment was "vindictive." (Doc. 9 at 1.)

Williams remains in custody.

## III.    Timeliness and Non-Successiveness of the § 2255 Motion

The Eleventh Circuit's opinion affirming Williams' convictions and sentence was issued as the Court's mandate on November 27, 2017. From that

---

[3]    Because the motion for return of property (doc. 7) is also filed in Williams' criminal cases and will be addressed in those proceedings in due course, it is hereby **DENIED** in this proceeding as duplicative.

point, Williams had 90 days, or until February 25, 2018, to file a petition for a writ of certiorari with the Supreme Court of the United States. SUP. CT. R. 13(1). When that date passed without such a petition from Williams, his conviction became final. *See Clay v. United States*, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."). Because Williams filed the instant § 2255 motion within one year of the date upon which his conviction became final, the original motion was timely. *See* 28 U.S.C. § 2255 (f)(1). This is also Williams' first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at §§ 2255(h), 2244(b)(3)(A).

However, the "vindictive indictment" claim Williams asserts for the first time in his later-filed "motion for relief," dated by Williams March 4, 2019, and entered into this record on March 7, 2019 (*see* doc. 9), is untimely-filed. This Court may only consider that claim if it "relates back" to those claims filed in the original, timely motion(s). *See Davenport v. United States*, 217 F.3d 1341, 1343-44 (11th Cir. 2000) (explaining that, when a defendant files a timely § 2255 motion, and then files an untimely supplemental motion that raises an additional claim, the

untimely claim is barred by the statute of limitations unless it "relates back" to the original motion under Federal Rule of Civil Procedure 15(c)). A claim "relates back" only if it arose "from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Id.* at 1344 (citations omitted). The "vindictive indictment" claim does not related back to any timely-filed claims. Williams cites *United States v. Schiller*, 424 A.2d 51 (D.C. Cir. 1980), in support of his claim, which addresses a claim of "vindictive prosecution" and sets forth a test for evaluating such a claim made by a defendant. However, Williams offers no facts whatsoever in support of such a claim. Accordingly, the Court will not consider it.

## IV.    Standard of Review

In litigation stemming from a § 2255 motion, "'[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the . . . [movant's] allegations are affirmatively contradicted by the record.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the Court to conduct an evidentiary hearing if, "'accept[ing] all of the . . . [movant's] alleged facts as true,'" the

movant has "'allege[d] facts which, if proven, would entitle him to relief.'" *Diaz v.*

*United States*, 930 F.2d 832, 834 (11th Cir. 1991) (internal citations omitted).

## V.     Discussion

### A.      Procedural Default

As an initial matter, all of Williams' underlying substantive claims are

procedurally barred because they were available to him on direct appeal and were

either raised, and denied by the Eleventh Circuit, or not pursued. Having failed to

raise available claims on direct appeal, Williams faces a heightened threshold for

having them considered in this § 2255 proceeding:

> [A]n available challenge to a criminal conviction or sentence must be
> advanced on direct appeal or else it will be considered procedurally
> barred in a § 2255 proceeding. A ground of error is usually "available"
> on direct appeal when its merits can be reviewed without further
> factual development. When a defendant fails to pursue an available
> claim on direct appeal, it will not be considered in a motion for § 2255
> relief unless he can establish cause for the default and actual prejudice
> resulting from the alleged error.

*Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam) (citations

and explanatory parentheticals omitted).

For the claims delineated, Williams fails to demonstrate cause for or

prejudice from his failure to raise those claims on direct appeal. Williams

repeatedly admits that he brought these matters to the attention of his appellate

counsel, and his appellate counsel has explained, in an affidavit submitted with the Government's response in opposition to Williams' § 2255 motion, that he thoroughly researched each issue raised by Williams, finding each meritless and without any basis in fact. (*See* Doc. 5-1 (Affidavit of Michael Tewalt)). As discussed in the next section, appellate counsel did not render constitutionally ineffective assistance because each of these claims is indeed meritless and would not have been successful on appeal. Thus, Williams cannot demonstrate cause for his default.

Nor can Williams demonstrate prejudice resulting from the default. To establish prejudice under this standard, the § 2255 movant "shoulder[s] the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Again, the failure to raise the meritless claims does not create the required prejudice.

Alternatively, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default [of the asserted constitutional violation]." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In this context, "'[a]ctual innocence' means factual

innocence, not mere legal innocence." *Lynn v. United States*, 365 F.3d 1225, 1235 n.18 (11th Cir. 2004) (per curiam) (citation omitted). "To establish actual innocence, [Williams] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotations marks and citation omitted). As discussed further herein, Williams cannot demonstrate that he is actually innocent of the charges of which he stands convicted, as the evidence against him at trial was overwhelming. As such, he cannot avoid the procedural bar through the miscarriage-of-justice exception.

**B.     Ineffective Assistance of Appellate Counsel**

To the extent that Williams complains of the effectiveness of his appellate counsel, he must demonstrate that his appellate representation failed to meet the *Strickland* standard:

> [T]he proper standard for evaluating . . . [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland v. Washington*. . . . [The movant] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [he] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to . . . [raise certain issues], he would have prevailed on his appeal.

*Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (addressing a claim that appellate counsel was ineffective for filing an *Anders* brief) (citations omitted).

As explained in further detail below, Williams' appellate counsel could not have been ineffective for failing to raise these issues because they are all meritless, having no basis in law or fact. It was thus reasonable for Williams' appellate counsel not to present the frivolous claims Williams now raises, and Williams cannot demonstrate that the outcome of his appeal was adversely affected.

## C.   Substantive Claims

### 1.   Failure to "knock and announce"

Williams claims that the law enforcement agents who arrested him failed to "knock and announce" their presence prior to entering his home in violation of his rights under the Fourth Amendment. This claim is contradicted by the record. During a suppression hearing held on April 27, 2016, FBI Special Agent Michael Greene ("Agent Greene") testified that agents knocked and announced their presence prior to entering Williams' residence. The transcript of this hearing provides:

Q.   OKAY. DO YOU KNOW IF A KNOCK AND ANNOUNCE WAS CONDUCTED ON THE FRONT OF THE FRONT PART RESIDENCE?

A.   YES, SIR, IT WAS.

Q.     DID YOU ACTUALLY HEAR IT?

A.     I HEARD IT.

(Doc. 572 at 70, in *Hall.*)

In denying Williams' motion to suppress, this Court recognized that the agents knocked and announced their presence prior to entering the home. (Doc. 316 at 4, in *Hall.*) This claim is without merit as contradicted by the record, and thus Williams' appellate counsel was not ineffective for failing to raise this claim on appeal.

### 2.     Use of excessive force in using "flash bang" device

Williams argues that agents violated his Fourth Amendment rights by using diversionary devices, commonly referred to as a "flash bangs," in making entry into his house and outbuilding. Although he cites no authority for this proposition, Williams appears to argue that the evidence obtained therein was due to be suppressed as a consequence of this alleged excessive force.

Williams cites three cases in support of this claim, but they are all distinguishable. In *Priester v. City of Riviera Beach, Florida*, the plaintiff filed a civil claim for damages against a police officer under 42 U.S.C. § 1983, alleging that the officer used excessive force against the plaintiff in violation of the Fourth Amendment after the plaintiff was bitten by a police dog. 208 F.3d 919, 923 (11th

Cir. 2000). The other two cases were also civil actions brought pursuant to § 1983. *See Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000) (use of excessive force in the process of handcuffing and arresting the plaintiff); *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (same). Nothing in any of these cases supports Williams' argument that the evidence seized in his house and outbuilding was due to be suppressed.

Furthermore, Williams provides no authority for the proposition that the use of a diversionary device *per se* constitutes excessive force. The Eleventh Circuit in *Dukes v. Deaton*, 852 F.3d 1035 (11th Cir. 2017), concluded that the use of a flash bang device was excessive force for purposes of a § 1983 claim, but that was where the officer threw the device into a dark room in which the occupants were asleep and failed to inspect the room, as he was trained to do, to determine whether bystanders occupied the room or other hazards existed; two other flash bangs had already been detonated in the same location, serving to adequately divert the attention of the defendant and others, such that the third detonation was gratuitous; and the defendant was injured by the blast. *Id.* at 1042-43. By addressing these nuances, the Eleventh Circuit was implying that the use of diversionary devices is not *per se* excessive force.

Unlike in *Dukes*, in this case, the transcript from the suppression hearing indicates that one flash bang was deployed into the home and another into the outbuilding. (Doc. 572 at 99-100, in *Hall*.) There is no evidence that either device injured Williams or that proper procedures were not followed. Moreover, testimony during the suppression hearing established the agent's purpose in deploying the devices:

> Q.  DO YOU KNOW IF ANY KIND OF DIVERSIONARY DEVICE WAS USED ON THE RESIDENCE?
>
> A.  IT WAS.
>
> Q.  WHAT IS THAT? EXPLAIN THAT TO –
>
> A.  IT'S A FLASH BANG DIVERSIONARY DEVICE WHICH IS SUPPOSED TO ASSIST US IN PREVENTING INDIVIDUALS AS A DISTRACTION. NOT TO HURT ANYBODY, MORE OF A DISTRACTION TO PREVENT INDIVIDUALS FROM WANTING TO FIGHT WITH US.

(*Id.* at 71.)

Moreover, even if this Court were to have concluded that the flash bangs that was used constituted excessive force, it does not necessarily follow that the evidence obtained later was due to be suppressed. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," but "contains no provision expressly precluding the use of evidence obtained in violation of its

commands." *Arizona v. Evans*, 514 U.S. 1, 10 (1995). The exclusionary rule, when applicable, forbids the use of improperly obtained evidence at trial. *See, e.g., Weeks v. United States*, 232 U.S. 383, 398 (1914). The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. *Illinois v. Gates*, 462 U.S. 213, 223 (1983). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* There are no facts present in this case suggesting that the deployment of flash bangs was excessive force. Moreover, their intended use, to avoid confrontation and injury, cannot rightly be characterized as "deliberate, reckless, or grossly negligent conduct." Accordingly, Williams' appellate counsel could not have been ineffective for failing to raise this issue.

### 3. Warrantless arrest

Next, Williams claims that agents entered his home without a warrant or any other exigent circumstances and arrested him unlawfully. This claim is also contradicted by the record. Williams complained of this same issue in his pre-trial

motion to suppress. In rejecting his claim, this Court has already addressed the matter, stating:

> Williams complains that the swat team did not have the original arrest warrant in their custody when they arrested him and further that they should not have entered the outbuilding in search of him. First, with regard to the argument that the actual written warrant was required to be on the premises when the swat team arrested Williams, defense counsel has pointed to no authority supporting his position. Also, this Court knows of nothing requiring the presence of the actual warrant on the scene of the arrest. Clearly the warrant existed at the time of the arrest. It had been verified by the agents prior to the operation, they had obtained a copy of the warrant, and the original warrant was executed by the arresting agent at the processing center after Williams was in custody. Nothing else is required.

(Doc. 316 at 5-6, in *Hall*). The Eleventh Circuit also squarely addressed this issue in affirming this Court on appeal. (*See generally* doc. 615, in *Hall*.) Accordingly, Williams' counsel could not have been ineffective for failing to raise this meritless issue.

### 4.    Search of the outbuilding

Williams' fourth ground is that his appellate counsel was ineffective for failing to challenge the entry into and search of the outbuilding on his property. The appeal filed on Williams' behalf raised an identical argument, and the Eleventh Circuit has already decided the matter, holding that this Court did not err in concluding that the search of the outbuilding was reasonable for two independent

reasons: it was a reasonable entry pursuant to the arrest warrant and it qualified as a valid protective sweep. (Doc. 615 at 9, in *Hall.*). Where a federal prisoner raises a claim that has already been decided on direct review, he cannot later attempt to relitigate that claim in a § 2255 proceeding. *Withrow v. Williams*, 507 U.S. 680, 720-21 (1993). Thus, this claim fails.

### 5. Sentencing guidelines calculation

Next, Williams relies upon the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to argue that his United States Sentencing Guidelines range was improperly enhanced because it was taken into account that he possessed firearms in furtherance of a drug trafficking offense, as was charged in Count Two of the *Williams* indictment, which was the count that was dismissed by the Government at trial.

As an initial matter, the Eleventh Circuit has held that claims of a non-constitutional nature in the application of the Sentencing Guidelines, "in the absence of a complete miscarriage of justice," may not be raised in a § 2255 motion. *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998). Williams' *Apprendi* claim is meritless, as described below, so Williams cannot establish that a miscarriage of justice occurred here. Accordingly, this underlying claim is not cognizable on collateral review.

Additionally, on the merits, the claim fails. At Williams' sentencing, U.S.S.G. § 2D1.1(b)(1) was applied, which provides a two-level enhancement where "a dangerous weapon (including a firearm) was possessed." Williams' base offense level was enhanced by two levels for the firearms recovered from the outbuilding on the day he was arrested. (*See* Presentence Investigation Report ("PSR"), doc. 24, at 45, ¶ 180, in *Williams*). In *Apprendi*, the Supreme Court held that any factor that increases the penalty for a crime beyond the prescribed statutory maximum penalty must be submitted to a jury and established with proof beyond a reasonable doubt. 530 U.S. at 490. Count Two of the *Williams* indictment that was dismissed at trial was not used to trigger any statutory minimum or maximum sentence against Williams. The firearms that formed the basis for Count Two were used as relevant conduct against him in applying U.S.S.G. § 2D1.1(b)(1). It is well-established that relevant conduct not proven to a jury beyond a reasonable doubt, and not admitted to by a defendant, may still be considered as relevant conduct in calculating the Sentencing Guidelines, where the conduct is proven by a preponderance of the evidence at sentencing. *United States v. Ghertler*, 605 F.3d 1256 (11th Cir. 2010). Indeed, even acquitted conduct may be used as relevant conduct, since a jury must find a defendant guilty beyond a reasonable doubt, but relevant conduct, in the application of the Guidelines, is only required to be proven

by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 149 (1997) (per curiam); *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006).

Accordingly, Williams' *Apprendi* claim is meritless, and his appellate counsel was thus not ineffective for failing to raise it before the Eleventh Circuit.

### 6.     Actual innocence

Williams argues that his appellate counsel was ineffective for failing to raise his actual innocence on appeal. Williams provides no information from which one might conclude that he was actually innocent of the charges against him other than to, again, allude to the FBI agents' failure to have the original arrest warrant with them the day he was arrested. The evidence against Williams at trial was overwhelming and the issue of the validity of the arrest warrant has been decided. As discussed above, Williams has not and cannot establish actual innocence, which would require him to show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. Accordingly, his appellate counsel was not ineffective for failing to raise this issue.

### 7.     Perjury and obstruction of justice

Here, Williams levels numerous unsupported allegations of perjury and obstruction of justice against the FBI generally and the agents involved in his case. He claims that Agent Gerhardt "lied under oath" at his trial, apparently because

he testified about Williams' arrest although he was not physically present during the arrest. Williams continues:

> All my transcripts been "tamered (sp.) with and reconstructed and falsified. FBI Special Agent M. Wayne Gerhardt and FBI Special Agent Michael Greene and other FBI agents conspired to create a crime on me and conspired to violate my constitutional rights. The FBI planted drugs in my home and staged my detached outbuilding to look as though it was used to process illegal drugs. Both FBI Agents lied "under oath." Agent Gerhardt used a forged search warrant to search my entire home. . . .

(Doc. 1 at 23.) Williams continues this theme of alleged perjury and obstruction of justice by asserting in his later-filed motion for an evidentiary hearing that Agent Gerhardt also lied at his detention hearing regarding a telephone conversation between Williams and one of his co-conspirators, Patrick Hall, and he claims that Agent Green could not have been present at his arrest because he did not testify at his detention hearing. (Doc. 8 at 1-2.) He also asserts that FBI agents committed bank fraud and mail fraud by driving his three vehicles after they were seized, using his debit and credit cards, threatening his girlfriend so that she would not tell him about their "outrageous conduct," and stealing legal documents from his mail and altering and reconstructing them. (*Id.*)

The evidence introduced against Williams at trial contradicts Williams' claims. For example, Williams' co-conspirator, Patrick Hall, testified at trial that he

had been inside Williams' outbuilding about ten times and that Williams was with him diluting and pressing kilograms of drugs on half of those occasions, using the equipment therein, including Williams' large metal kilo-presses, to repackage kilograms for sale. (Doc. 576 at 219-25, in *Hall*.) Williams also offers zero evidence in support of his claims that his trial transcripts were doctored and that law enforcement stole from him and/or tampered with his mail.

With regard to Agent Gerhardt's testimony at Williams' detention hearing, the Court notes that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a detention] hearing." 18 U.S.C. § 3142(f). A magistrate judge or district judge may thus consider hearsay evidence and order detention based upon such evidence where the evidence is sufficiently reliable. *United States v. Acevedo-Ramos*, 755 F.2d 203, 208 (11th Cir. 1985). At Williams' detention hearing, Agent Gerhardt testified concerning the investigation that led to Williams' arrest, and he was cross-examined by Williams' defense counsel. The Magistrate Judge took this testimony into account and ultimately ordered Williams' detention.

Later, at trial, Agent Gerhardt testified that shortly after Williams' arrest on the morning of October 21, 2015, he received a call from Agent Greene, who had conducted the arrest, who told him that he had "seen something of evidentiary

value," which caused Agent Gerhardt to obtain a search warrant for Williams' property. (Doc. 575 at 68-71, in *Hall*.) This Court allowed Agent Gerhardt to testify as to what Agent Greene told him in order to explain why Agent Gerhart sought the search warrant. (*Id.* at 70-71.) Insofar as Williams challenges Agent Gerhardt's serving as the affiant on the search warrant for his home, despite not being present for the arrest, an affiant may offer hearsay in applying for a search warrant pursuant to Fed. R. Crim. P. 41. "Observations of fellow officers . . . who are engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986) (quoting *United States v. Ventresca*, 380 U.S. 102, 111 (1965)).

Williams' appellate counsel was not ineffective in failing to raise these meritless claims.

### 8. Discovery violation

Williams next alleges that the Government violated its obligations under Fed. R. Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over copies of "the arrest warrant, search warrant, and all affidavits in support of the search warrant for my property . . . ." (Doc. 1 at 16.) This allegation is contradicted by the record.

It is obvious from the record that Williams' defense attorneys had these documents and were well aware of their existence. For example, in his motion to suppress filed on April 5, 2016, Williams pleads, "On that same date, at or about 10:35 AM, a search warrant was issued for Defendant's residence." (Doc. 263 at 2, in *Hall*). To be sure, Williams' lawyers knew the exact time at which the warrant was signed because they had a copy. Moreover, the transcript of the suppression hearing reveals that the Government marked the application, affidavit, and all accompanying attachments as an exhibit that was entered into evidence. (Doc. 572 at 24, in *Hall*.) At that same hearing, Williams' attorneys asked numerous questions about the search warrant and its contents. (*See generally id.*)

Williams' appellate counsel could not have been ineffective for failing to raise this claim because it is untrue.

### 9. Constructive amendment of the indictment

Here, Williams appears to argue that the Court improperly expanded the elements of the crimes he was charged with by instructing the jury on offenses involving heroin, where Count One of the *Williams* indictment alleged possession with the intent to distribute only 500 grams or more of cocaine hydrochloride.

A constructive amendment of a grand jury indictment occurs "when the evidence presented at trial and the instructions given to the jury so modify the

elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Gonzalez*, 661 F.2d 488, 492 (11th Cir. 1981).

There was no constructive amendment of the indictment here because Williams was also charged, in Count One of the *Hall* case, in a conspiracy that involved distribution and possession with the intent to distribute cocaine hydrochloride, "crack" cocaine, and heroin. (Doc. 17, in *Hall*). If Williams is taking issue with the fact that the heroin seized from his home on October 21, 2015, was outside the end date listed for the conspiracy alleged in Count One of the *Hall* indictment, such an argument fails for several reasons. The end date on the *Hall* indictment is immaterial with regard to proof at trial of Williams' involvement in the *Hall* conspiracy. First, it is well-established that the date and time of an offense is not an essential element of an offense. *United States v. Steele*, 178 F.3d 1230, 1234 (11th Cir. 1999); *United States v. Reed*, 887 F.2d 1398, 1403 (11th Cir. 1989) ("When the government charges that an offense occurred "on or about" a certain date, the defendant is on notice that the charge is not limited to the specific date or dates set out in the indictment."). Moreover, "[a] conspiracy is presumed to continue until its objectives have been abandoned or accomplished." *United States v. Richardson*, 532 F.3d 1279 (11th Cir. 2008). Here, Williams was charged with

having been involved in the *Hall* cocaine, "crack," and heroin conspiracy, a criminal enterprise that he continued to participate in until his arrest and imprisonment on October 21, 2015. His possession of cocaine and heroin in his home on that date is strong evidence indeed of his continued involvement in these criminal activities.

Additionally, the law in the Eleventh Circuit is also clear that the type of drug involved in a violation of a Title 21 offense is not an element of the offense. *United States v. Sanders*, 668 F.3d 1298, 1309 (11th Cir. 2012) (rejecting a constructive amendment claim because "a person violates § 841(a) merely by knowingly possessing with intent to distribute a controlled substance").

Williams' allegation of constructive amendment relies on a misunderstanding of the law, and accordingly, does not constitute ineffective assistance of counsel on the part of his appellate lawyer.

### 10. Defective indictment

Finally, Williams argues that the *Williams* indictment was defective in failing to state an offense, and he states that he did not receive a copy of the indictments in both cases before trial and that the indictments were never unsealed.

First, Williams' claim that the *Williams* indictment fails to state an offense because "there was no witness or evidence that I was involved with heroin" is

contradicted by the trial record and applicable law. Evidence introduced at trial revealed that over half a kilogram of heroin was recovered from inside Williams' washing machine, wherein agents also recovered a half kilogram of cocaine. Notwithstanding this misrepresentation, Williams' challenge wrongly assumes that the type of drug involved is an element of the offense of which he was charged and convicted. It is immaterial whether Williams was convicted of conspiring to distribute cocaine, heroin, or both. *Sanders*, 668 F.3d at 1309. As set forth above, it is only necessary that he be convicted of conspiracy to distribute a controlled substance. *Id.* That said, the jury's verdict makes clear that they convicted him of conspiracy to distribute cocaine, having found beyond a reasonable doubt that he did so in relation to an amount of cocaine that triggered a mandatory minimum sentence: 500 grams or more, but less than 5 kilograms. (Doc. 329, in *Hall*.)

Second, Williams' claims that he never received a copy of the indictments against him, and that the *Hall* indictment was never unsealed, are equally untrue. The docket sheets in the *Hall* and *Williams* cases both demonstrate that Williams is wrong. The *Hall* indictment was unsealed on October 21, 2015. (Doc. 21, in *Hall*.) The *Williams* indictment, which was returned on December 28, 2015, after Williams was in custody, was never sealed. (*See generally Williams* docket sheet). Williams was arraigned on the *Hall* indictment on October 23, 2015, and the docket

sheet shows that he was served with a copy of the indictment. (*Hall*, docket sheet at 10/23/2015). He was arraigned on the *Williams* case and served with a copy of the indictment on January 14, 2016. (*Williams*, docket sheet at 01/14/2016).

Williams' counsel was not ineffective for failing to raise these meritless allegations on appeal.

## V.    Conclusion

For the foregoing reasons, Williams' § 2255 motion to vacate, set aside, or correct a sentence is due to be denied and this case dismissed with prejudice.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  *See* Rule 11, Rules Governing § 2255 Proceedings.  This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that a reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted).  This Court finds that Williams' claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON JUNE 3, 2019.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704
